UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. L-22-CR-1052 |
| 14.   PEDRO HAIRO ABRIGO | § § § | |

### GOVERNMENT'S MOTION FOR PRE-TRIAL DETENTION

Comes now the United States of America, by and through the undersigned attorneys, and hereby moves to detain defendant Pedro Hairo Abrigo pending trial. In support thereof, the government states the following:

### INTRODUCTION

On August 9, 2022, a Grand Jury in the Southern District of Texas, Laredo Division, returned an indictment charging the defendant and 13 co-conspirators under seal with various human smuggling offenses. The defendant was arrested on September 13, 2022, in the Western District of Texas. Upon arrest and pursuant to the Court's order the indictment was unsealed. The government expects the defendant to appear for his initial appearance on September 14, 2022, in the Western District of Texas.

The United States respectfully moves this Court to order the pre-trial detention of the defendant pursuant to 18 U.S.C. § 3142(f)(2). The defendant is charged in a criminal indictment with the following offenses: (1) Conspiracy to Transport and Move an Alien, Placing in Jeopardy the Life of Any Person, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(A)(v)(I), and 1324(a)(1)(B)(iii); and (2) Conspiracy to Conceal, Harbor, or Shield from Detection an Alien for the Purpose of Commercial Advantage or Private Financial Gain, in violation of 8 U.S.C. §§

1

1324(a)(1)(A)(iii), 1324(a)(1)(A)(v)(I), and 1324(a)(1)(B)(i).  Based upon the nature and circumstances of the offense, the weight of the evidence, the history and characteristics of the defendant, the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release, and the risk of flight, there is no combination of conditions that will reasonably assure the appearance of the defendant and the safety of the community.

## FACTUAL BACKGROUND

This case arises from a multi-year investigation by law enforcement into a human smuggling organization (HSO) of which the defendant was a member that transported and harbored numerous migrants within the United States who did not have legal authorization to enter and remain in the U.S.  This HSO was a large-scale, highly lucrative organization with an extensive network of co-conspirators who coordinated and facilitated the transportation of at least hundreds of migrants from the U.S./Mexico border near Laredo, Texas, to areas near Austin, San Antonio, and other points in the interior of the United States.  Members of the HSO commonly referred to migrants as "boxes" or "packages."  Migrants smuggled by the HSO typically paid around $8,000, with $3,000 paid up front to human smugglers in Mexico and $5,000 paid to members of the HSO once the migrant arrived in the United States.

Through the course of the investigation, law enforcement interdicted numerous smuggling events tied to this HSO, in which law enforcement discovered vehicles and stash houses containing migrants. In many instances, these migrants were apprehended and removed from the United States. The methods the HSO used to transport migrants were particularly dangerous.  HSO drivers transported migrants in suitcases placed inside pickup trucks; in the back of tractor-trailers; under locked hard bed covers of pickup trucks; in empty water tanker trucks; and in empty wooden crate boxes that were strapped to flatbed trailers.  These methods

placed the aliens in danger, as they were frequently held in locked spaces with little ventilation, which became overheated, and they were driven at high speeds with no vehicle safety devices.

For example, on May 4, 2021, law enforcement agents were conducting surveillance of a truck in Laredo believed to be used by a member of the HSO, when the agents heard loud thumps emanating from the vehicle and observed the tail-lights flicker. They approached the covered bed portion of the truck and asked if there was anybody hiding under the cover. A female voice answered and stated she and others were trapped inside and were struggling to breathe. With the assistance of the Laredo Fire Department, law enforcement discovered a total of five individuals hiding and trapped under the locked bed cover, including an eleven-year-old minor. Later that evening, after obtaining a search warrant, law enforcement discovered 65 more migrants at a stash house in Laredo where the truck had been surveilled earlier that day. The following are photographs from the rescue of the migrants hidden under the bed cover of the truck:

 

On November 17, 2021, law enforcement interdicted a load of 38 migrants at a Border Patrol checkpoint. The migrants were found hidden inside wooden boxes strapped to a flatbed truck being driven by an HSO member. Inspection revealed that the wooden crates were secured with metal tabs and heavy-duty ratchet straps. The temperature inside the crates was 81 degrees with little to no ventilation for the migrants locked inside. Migrants interviewed by law

enforcement stated that they feared for their lives due to the lack of oxygen inside the crates. The following photographs were taken at the time of the interdiction:

 

On November 27, 2021, law enforcement interdicted at a Border Patrol checkpoint a load of 28 migrants being transported inside an empty water tanker truck driven by a co-defendant. As depicted in the photos below, the water tanker had little, if any, ventilation and no safety devices in the event of an accident:

 

On December 18, 2021, after obtaining a search warrant, law enforcement searched a property in Laredo. On the property, law enforcement agents located a tractor-trailer containing 81 migrants, which a co-defendant intended to drive to San Antonio. The following is a photograph of the inside of the tractor-trailer when it was encountered by law enforcement:



This HSO was as lucrative as it was prolific, and it generated millions of dollars in proceeds. The indictment notices forfeiture of three properties in the Austin area (two were purchased with proceeds of the HSO and one was used to facilitate the smuggling enterprise) and money judgments of forfeiture totaling almost $2.3 million representing proceeds of the HSO.

## **APPLICABLE LEGAL STANDARD**

The Bail Reform Act permits a judicial officer to hold an individual without bond pending trial if the officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In considering whether detention is appropriate, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

# ARGUMENT

## 1. Nature and Circumstances of Offense Charged

The nature and circumstances of the offense warrant detention. The defendant was a key financial facilitator and member of the HSO who recruited co-conspirators to transport migrants, paid for utilities at stash houses used by the HSO, and engaged in numerous financial transactions to benefit the HSO since at least 2018. The HSO was motivated by lucrative profits, with little concern for the life-endangering risks posed to migrants. The defendant was also not deterred by the numerous law enforcement interdictions that occurred through the course of the investigation. Instead, over time the HSO transitioned from smaller smuggling events (such as HSO drivers transporting several migrants in pickup trucks in one smuggling event) to the larger loads discussed above, in which migrants were crammed inside tractor-trailers, water tankers, and wooden crates on flatbed trucks. The nature of the defendant's criminal conduct, the sheer number of migrants smuggled by the defendant's HSO, and the length of time the defendant has been involved in this criminal activity weigh strongly in favor of detention in this case.

## 2. Weight of the Evidence Against the Defendant

The weight of the evidence against the defendant is strong and weighs in favor of detention. The evidence against the defendant is the product of a multi-year investigation by law enforcement into the operation of the defendant's HSO. Through the investigation, law enforcement obtained evidence demonstrating that the defendant recruited co-conspirators, made payments to other HSO members, received payments from relatives of migrants who were smuggled by the HSO, registered vehicles in his name that were used to transport migrants, and paid the utilities for stash houses. For example, law enforcement interdicted numerous human smuggling events that were organized by this HSO, discovering vehicles attempting to smuggle migrants past Border Patrol

checkpoints as well as stash houses in the Laredo and Austin areas and elsewhere. Law enforcement was able to establish that some of the above-described houses and vehicles were registered to the defendant. The defendant also hired various members of the conspiracy, including the drivers. Investigators also obtained numerous financial documents which show that the defendant moved hundreds of thousands of dollars through his accounts and funneled smuggling proceeds to other members of the HSO. The government also anticipates presenting the testimony of migrants who were smuggled by the HSO, among other evidence gathered during the course of the investigation.

### 3. History and Characteristics of the Defendant

The history and characteristics of the defendant, which include access to substantial funds that would allow him and others to continue the human smuggling operation or to flee, weighs in favor of detention. The defendant is a resident of Killeen, Texas, with no apparent legitimate ties to Laredo. In addition to facilitating the smuggling of migrants, the defendant was instrumental in concealing of illicit profits from the HSO. The review of the defendant's bank accounts shows a pattern of substantial cash deposits that do not appear to have a legitimate source and are not consistent with his reported sources of income. Illicit proceeds into these accounts have been conservatively calculated to be $745,966.56, consisting of cash and cash equivalents from individuals across the country (i.e., smuggled migrants or their family members). The defendant employed various methods to conceal the nature, location, source, ownership and control of the proceeds of the HSO, including the use of funnel accounts and moving illicit proceeds between accounts under the pretense of "work payments," among other methods. The amount of money passing through the defendant's bank accounts is inconsistent with income the defendant reported

to financial institutions, specifically that he was employed at HEB Grocery and earned $50,000 annually. The indictment notices forfeiture of $745,966.56 as to the defendant personally.

4. **Safety of the Community**

The nature and circumstances of the offenses charged here are indicative of the danger to the community posed by the defendant and weigh in favor of detention. A determination of dangerousness to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). The defendant engaged in an ongoing, years-long, extensive criminal scheme in which migrants were transported in unsafe conditions that put their lives and health at risk. As discussed above, this HSO transported migrants by putting them inside suitcases inside the cabs of pickup trucks; transported them in tractor-trailers; concealed them in covered beds of pickup trucks; hid them in empty water tankers; and transported migrants inside empty boxes or crates that were strapped to flatbed trucks.

These methods endangered the migrants because they had little ventilation and became overheated, and they were driven at high speeds with no safety devices to protect them in the case of an accident. Given the HSO's extensive operations, its proclivity for using dangerous methods to smuggle migrants, and the fact that the defendant is highly likely to continue engaging in his criminal behaviors if released, the defendant poses a significant risk to the safety of the community. Further, this HSO has demonstrated its ability to continue human smuggling operations when one leader is detained while others remain at large in the community.[1] Allowing the members of the

---

[1] In 2019, a co-defendant who was a leader of the HSO was convicted of bringing in and harboring aliens and was sentenced to one month of incarceration and three years of supervised release, which expired in August 2022. During the time when this co-defendant was on supervised release, he continued his smuggling activities for this HSO. Witnesses have indicated that after his arrest, Erminia Serrano Piedra, took over leadership of the HSO's operations, demonstrating that this organization is not easily deterred and can quickly reconstitute its leadership to continue its illegal activity.

organization to be released pending trial provides them with a particularly easy opportunity to resume the life-endangering human smuggling activities for which they were indicted.

5. **Risk of Flight**

The preponderance of the evidence shows that the defendant should be detained pending trial, as no condition or combination of conditions will reasonably assure his appearance. First, the defendant is facing a maximum sentence of 20 years imprisonment and a maximum fine of $250,000, which provides a clear incentive too flee. Second, the defendant and his criminal organization have strong ties outside the United States: the investigation has shown that members of the HSO personally assisted migrants to make arrangements with smugglers in Mexico, indicating this HSO's connections with criminal organizations in that country. Several co-defendants are citizens of Mexico with no legal status in the United States. Additionally, the defendant himself is a dual citizen of the United States and Peru, where he has traveled as recently as March 2022.

Third, the defendant has ready access to large sums of money that were obtained through the criminal smuggling enterprise. As discussed above, analysis of financial records shows that the defendant and his co-conspirators generated large amounts of money through the HSO's illicit activities. The defendant and his co-conspirators concealed the sources of the illicit proceeds of the HSO by using their personal bank accounts and business accounts of their purported businesses as funnel accounts. Migrants and their relatives sent payments for being smuggled to these funnel accounts, as directed by members of the HSO. The money was then either withdrawn or moved between the co-conspirators' accounts and used to promote their illegal activities and to purchase luxury personal items, such as housing, cars, jewelry, and designer clothing. In particular, in the indictment, the government has provided notice of its intent to forfeit $745,966.56 from this

specific defendant, which represents the proceeds of human smuggling offenses. This is a conservative figure: the government is continuing to investigate the defendant's finances, and it is possible that the government will identify additional proceeds of the HSO that it will seek to forfeit from the defendant.

In short, the defendant has the motive and ample means to flee and should be detained pending trial.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the government submits that the defendant should be detained pending trial.

Respectfully submitted this 13th day of September 2022.

Respectfully submitted,

KENNETH A. POLITE JR.
ASSISTANT ATTORNEY GENERAL


  /s/ Erin Cox
Erin Cox
Christian Levesque
Trial Attorneys
U.S. Department of Justice
Criminal Division
Human Rights and Special Prosecutions Section

JENNIFER B. LOWERY
UNITED STATES ATTORNEY

  /s/ Jennifer Day
Jennifer Day
Assistant United States Attorney
Southern District of Texas

## CERTIFICATE OF SERVICE

      We hereby certify that on September 13, 2022, a true and correct copy of the foregoing instrument was filed with the Clerk of the Court.

                                                    */s/ Erin Cox*
                                                    Erin Cox
                                                    Christian Levesque
                                                    Trial Attorneys